UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GREGORY REAUX                                          CIVIL ACTION

VERSUS                                                      NO. 10-1230

RODNEY JACK STRAIN, JR.                          MAGISTRATE JUDGE
                                                                   JOSEPH C. WILKINSON, JR.


**ORDER AND REASONS ON MOTION**

Plaintiff, Gregory Reaux, is a convicted inmate currently incarcerated in the Dixon Correctional Institute in Jackson, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 alleging that while incarcerated in the St. Tammany Parish Jail as a pretrial detainee, defendants failed to protect him from attack by other inmates on two separate occasions. Plaintiff seeks $500,000 in damages. Record Doc. No. 2 (Complaint at ¶¶ IV and V, pp. 3 and 4).

On July 8, 2010, I conducted a conference in which plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny. Plaintiff's testimony provided during the Spears hearing has been transcribed and filed in the record. Record Doc. No. 41. Assuming the truth of plaintiff's testimony for screening purposes only, 28 U.S.C. § 1915A, I concluded that plaintiff had stated claims for failure to protect him from harm on August 9, 2009, and again on December 19, 2009. Record Doc. No. 13. On December 28, 2010, two defendants, Morgan Jordon and Justin Dillon, were dismissed by the presiding district

judge pursuant to Fed. R. Civ. P. 4(m) after protracted efforts to identify, locate and serve them by the U.S. Marshals Service were unsuccessful.  Record Doc. Nos. 13, 16, 17, 19, 20, 25, 29, 34.  Thereafter, this matter was referred to a United States Magistrate Judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) upon written consent of all parties, Record Doc. No. 35, and a trial by jury is scheduled before me.

A motion for summary judgment filed on behalf of the two remaining defendants, Sheriff Rodney J. Strain, Jr., and Deputy Jonathon Cook, is now pending.  Record Doc. No. 43.  Plaintiff has not filed a response to defendants' motion as ordered by the court. Record Doc. Nos. 44-46.  Having considered defendants' motion for summary judgment, the record and the applicable law, and for the following reasons, I find that defendants' motion must be GRANTED.

Defendants' motion makes four (4) arguments[1] in support of summary judgment: (1) Plaintiff cannot establish any claim of failure to protect.  (2) Defendants are entitled to dismissal on grounds of qualified immunity. (3) Plaintiff failed to exhaust administrative remedies prior to filing suit. (4) Defendant Sheriff Strain was not personally involved in any of the actions about which plaintiff complains and cannot be

---

[1]The motion itself, Record Doc. No. 43, asserts only three grounds for relief, overlooking the alleged failure to exhaust the ARP, which is nevertheless fully asserted and briefed in the supporting memorandum. Record Doc. No. 43-2 at pp.16-20.

held liable solely in his supervisory capacity.  Record Doc. No. 43-2 (Memorandum in Support of Defendants' Motion for Summary Judgment).

In support of their motion, defendants have attached and/or referred to the following exhibits: (1) affidavit of Captain David Hanson with attached summary of the grievance procedure found in the St. Tammany Parish Jail Inmate Handbook in place in 2009 and blank forms used in the grievance process; (2) plaintiff's administrative file from the jail; and (3) plaintiff's medical records from the jail.  Record Doc. Nos. 43-3 - 43-5 (Exhibits A and B to defendants' motion) and Record Doc. No. 15 (plaintiff's medical records previously provided to the court).

In the absence of a written response to the motion by plaintiff, I have relied upon his pleadings and previous written submissions to the court, together with his sworn testimony provided at the <u>Spears</u> hearing, in opposition to the motion.  Record Doc. No. 41.

## <u>ANALYSIS</u>

I.  <u>STANDARDS OF REVIEW</u>

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(a).  Rule 56 was revised to "take effect on December 1, 2010, and shall govern in

all proceedings thereafter commenced and, insofar as just and practicable, all proceedings

then pending."   Order of the Supreme Court of the United States (Apr. 28, 2010),

www.supremecourt.gov/orders/courtorders/frcv10.pdf.   Because "the standard for

granting summary judgment remains unchanged" by the revision, Federal Civil Judicial

Procedure and Rules, 2010 Amendments Advisory Committee Notes, at 260 (West 2011

rev. ed. pamph.) (hereafter "Advisory Committee Notes"), I find it just and practicable

to apply the revised Rule 56 in this proceeding.

Revised Rule 56 establishes new procedures for supporting factual positions:

(1)  A party asserting that a fact cannot be or is genuinely disputed must
support the assertion by:
> (A) citing to particular parts of materials in the record,
> including depositions, documents, electronically stored
> information, affidavits or declarations, stipulations (including
> those made for purposes of the motion only), admissions,
> interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the
> absence or presence of a genuine dispute, or that an adverse
> party cannot produce admissible evidence to support the fact.

(2)  Objection That a Fact Is Not Supported by Admissible Evidence.  A
party may object that the material cited to support or dispute a fact cannot
be presented in a form that would be admissible in evidence.

(3)  Materials Not Cited.  The court need consider only the cited materials,
but it may consider other materials in the record.

(4)  Affidavits or Declarations.  An affidavit or declaration used to support
or oppose a motion must be made on personal knowledge, set out facts that

would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

Thus, the moving party bears the initial burden of identifying those materials in the record that it believes demonstrate the absence of a genuinely disputed material fact, but it is not required to negate elements of the nonmoving party's case.  Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "[A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to [a particular material] fact."  Advisory Committee Notes, at 261.

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  No genuine dispute of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented.  Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must cite to particular evidence in the record to support the essential elements of its claim.  Id. (citing Celotex, 477 U.S. at 321-23).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders

all other facts immaterial." <u>Celotex</u>, 477 U.S. at 323; <u>accord</u> <u>Capitol Indem. Corp.</u>, 452 F.3d at 430.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." <u>Edwards v. Your Credit, Inc.</u>, 148 F.3d 427, 432 (5th Cir. 1998); <u>accord</u> <u>Murray v. Earle</u>, 405 F.3d 278, 284 (5th Cir. 2005). "<u>We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts</u>." <u>Badon v. R J R Nabisco Inc.</u>, 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted) (emphasis in original). "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'" <u>Nat'l Ass'n of Gov't Employees</u>, 40 F.3d at 713 (quoting <u>Anderson</u>, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in <u>any</u> case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted) (emphasis in original); <u>accord</u> <u>Duron v. Albertson's LLC</u>, 560 F.3d 288, 291 (5th Cir. 2009).

II.    ARP EXHAUSTION

In the Prison Litigation Reform Act of 1996 ("PLRA"), Congress revised the pre-lawsuit exhaustion provision to require that a prisoner complete an available prison ARP before filing a Section 1983 suit and to eliminate the district court's discretion to permit a suit to proceed without exhaustion.  Porter v. Nussle, 534 U.S. 516, 532 (2002) (citing the Civil Rights of Institutionalized Persons Act, 94 Stat. 352, as amended, 42 U.S.C. § 1997(e)).  In short, 42 U.S.C. § 1997(e)(a) now mandates exhaustion of administrative remedies, stating that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997(e)(a) (emphasis added).

In Clifford v. Gibbs, 298 F.3d 328, 329 (5th Cir. 2002), the Fifth Circuit reiterated the Supreme Court's finding that the "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Id. (citing Porter, 534 U.S. at 992) (emphasis added).

As a threshold matter, I find that summary judgment cannot be granted based on defendants' argument that plaintiff failed to exhaust the available ARP.  Defendants have submitted evidence tending to show that plaintiff filed an ARP grievance concerning only

the December incident and not the August incident; that he failed to complete the ARP process because he did not exhaust his appeals; but that no appeal would have been taken in any event, since the grievance was resolved at an early step. Putting aside the question of whether exhaustion through ARP appeal is required when a prison grievance  is resolved by the parties at an earlier ARP step, I still must find that a genuine issue of material fact precluding summary judgment exists on the current record.  Specifically, plaintiff's original complaint in this case was signed and submitted by plaintiff under penalty of perjury.  Record Doc. No. 2 (Complaint at ¶ VI(1)).  Thus, it constitutes competent summary judgment evidence. 28 U.S.C. § 1746.  The complaint, a declaration signed under penalty of perjury in these circumstances, clearly states:

> Did you present the facts relating to this complaint in the prisoner grievance procedure?
> Yes (√)   No ( )
> If your answer is YES,
>                    * * *
> As to each grievance, compllant (sic) provided or listed above, have you exhausted or completed all steps in the procedure, including appeals?
> Yes.  I filed complaints and an ARP between 12-22-09 to 2-5-10. The prison did not respond.

Record Doc. No. 2 (Complaint at ¶ II(B) and (C)(2)).  During his <u>Spears</u> testimony, Reaux stated that in his mind the August and December attacks were related.  Record Doc. No. 41 at p. 18.

While the evidence of failure to exhaust ARP procedures submitted by plaintiffs is certainly weightier and more compelling, this is summary judgment, not trial. Plaintiff's verified complaint, signed under penalty of perjury, and his <u>Spears</u> testimony are sufficient to create a triable genuine issue of material fact as to ARP exhaustion, and summary judgment cannot be granted on that basis.

III.    <u>FAILURE TO PROTECT</u>

Reaux's complaint that he was attacked by other inmates on two separate occasions, once on August 9, 2009 by inmate Eddie Coleman, and the other on December 19, 2009 by inmates Ricky Harrison, Christopher Seaton, Jeffrey Jacobs, Alex Jones and Kym Dilworth, asserts claims that prison officials unconstitutionally failed to protect him from harm.  Reaux was a pretrial detainee at the time of the incidents on which he bases this complaint.  In <u>Hare v. City of Corinth</u>, 74 F.3d 633, 650 (5th Cir. 1996), the Fifth Circuit stated:

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Thus, regardless whether the inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials that expose

an inmate to being harmed by another inmate.   Hamilton v. Lyons, 74 F.3d 99, 104 n.3 (5th Cir. 1996); Hare, 74 F.3d at 650.

Prison officials have a duty to protect inmates from harm or violence by other inmates.   Farmer v. Brennan, 511 U.S. 825, 833 (1994); Hare, 74 F.3d at 650.   "To establish a failure-to-protect claim, an inmate must show that he was 'incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.'"   Pogue v. Bello, 275 F.3d 1079, 2001 WL 1467095, at *1 (5th Cir. Oct. 25, 2001) (quoting Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995)).

A convicted prisoner or pretrial detainee may succeed on a claim for damages under 42 U.S.C. § 1983 for failure to protect from harm only if he demonstrates that there has been "deliberate indifference" by prison officials or other state actors.   Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Constitution.  Estelle v. Gamble, 429 U.S. 97, 105-06 (1976); accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Hare, 74 F.3d at 650.  "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it."  Farmer, 511 U.S. at 847.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Constitution by failing to protect him from attack by another inmate. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (quotation omitted). Thus, plaintiff must show that a risk of serious harm existed from another inmate to satisfy this prong. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Rhem v. Marion County Sheriff Dep't, 263 F.3d 164, 2001 WL 803853, at *1 (5th Cir. June 14, 2001).

Further, the plaintiff must establish that the defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 834, 837; accord Newton v. Black, 133 F.3d 301, 308 (5th Cir. 1998) (emphasis added). "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003). If the court finds that one of the components of the test is not met, it need not address the other component. Davis, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor

11

> disregarded a known or obvious consequence of his action.  Board of the
> County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S.
> 397, 117 S. Ct. 1382, 1391 (1997) . . . .  The "deliberate indifference"
> standard permits courts to separate omissions that "amount to an intentional
> choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Tex. Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (citations

omitted) (emphasis added).  "'Subjective recklessness,' as used in the criminal law, is the

appropriate test for deliberate indifference."  Norton, 122 F.3d at 291 (citing Farmer, 511

U.S. at 838-40).

In the instant case, plaintiff's pleadings as expanded by his testimony establish that

nothing more than episodic acts or omissions as defined in Hare are at issue in this case.

Thus, the "deliberate indifference" standard applies and plaintiff must allege facts

sufficient to establish that defendants knew he faced a substantial risk of serious harm

and disregarded that risk by failing to take reasonable measures to abate it.  In this case,

Reaux fails completely to present evidence sufficient to establish deliberate indifference

by either defendant.

In cases involving the prisoner's status as a former law enforcement officer, courts

have emphasized the importance of the causation element of the Section 1983 failure to

protect claim.  In Won v. Dias, 2008 WL 113661 (D. Haw. 2008), the trial court granted

summary judgment and dismissed plaintiff's claims that a corrections officer had failed

to protect an incarcerated former police officer from attack by another inmate.  The court

stated that "Section 1983 requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff." Won, 2008 WL 113661 at *7 (citing Monell v. Dept of Soc. Services, 436 U.S. 658 (1978), Rizzo v. Goode, 423 U.S. 362 (1976) (emphasis added)). Quoting Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988), the Won court emphasized that the "'inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant . . . .' [The court] must focus on whether the individual defendant was in a position to take steps to avert [the harm], but failed to do so intentionally or with deliberate indifference . . . . [the court] must take a very individualized approach" as to each defendant . . . . "the prisoner must establish individual fault . . . . Sweeping conclusory allegations will not suffice to prevent summary judgment. . . ." Won, 2008 WL 113661, at *7 (emphasis added).

As to defendant Cook, plaintiff in this case makes a single, discrete allegation of fault: before Reaux was first attacked in August 2009, Deputy Cook told other inmates that Reaux was a former corrections officer; specifically, a former Orleans Parish sheriff's deputy who had worked at the Orleans Parish Prison ("OPP"). Record Doc. No. 41 (Transcript of Plaintiff's Spears testimony at pp. 12, 13, 17-18, 20, 24). At several points in his testimony, Reaux also states that deputies were at fault because, although he had asked to be placed in protective custody because of his former

employment, he was housed in the general prison population.  It is important to note, however, in connection with the individualized evaluation of causation by <u>defendant</u> <u>Cook</u> that must be conducted in a Section 1983 case, that Reaux does <u>not</u> name Cook as one of the deputies to whom he identified himself as an ex-deputy or made a request for protective custody.  Instead, Reaux clearly testified that upon his arrest on April 21, 2009, he notified <u>Corporal</u> <u>Martens</u> that he was an ex-deputy and asked <u>Corporal</u> <u>Martens</u> to place him in protective custody.  <u>Id.</u> at p. 13.  He testified that Martens relayed his request to be placed in protective custody to Lt. Franklin.  <u>Id.</u> at p. 22.  Franklin "kept him isolated," Reaux testified, "but another deputy put me in [general] population."  <u>Id.</u> at p. 23.  Asked to identify this other deputy, Reaux clearly stated that Deputies Jordon and Dillon[2] were the deputies responsible for placing him in the general prison population instead of in protective custody.  <u>Id.</u> at p. 23, 24.

"[T]he fact that an inmate sought and was denied protective custody is <u>not</u> dispositive of the fact that prison officials were therefore deliberately indifferent to his safety."  <u>Lewis v. Richards</u>, 107 F.3d 549, 553 (7th Cir. 1997), <u>quoted</u> in <u>O'Brien v.</u> <u>Indiana Dep't of Correction</u>, 2006 WL 1793577, *5 (S.D. Ind. 2006), <u>aff'd</u>, 495 F.3d 505 (7th Cir. 2007) (emphasis added).  In this case, however, Reaux's testimony does not

---

[2]As noted in the text above, on December 28, 2010, defendants, Morgan Jordon and Justin Dillon, were dismissed by the presiding district judge pursuant to Fed. R. Civ. P. 4(m) after protracted efforts to identify, locate and serve them by the U.S. Marshals Service were unsuccessful. Record Doc. Nos. 13, 16, 17, 19, 20, 25, 29, 34.

implicate defendant Cook in any way, even in this non-dispositive decision concerning Reaux's custodial status.  Thus, any liability Cook might have must rest exclusively on Reaux's allegation that Cook told other inmates that Reaux was a former law enforcement officer.  An individualized, focused evaluation of each of the two incidents upon which Reaux bases this complaint demonstrates that Reaux can<u>not</u> establish Cook's deliberate indifference in connection with his alleged comments to other inmates.

Reaux testified that "the word had really got out that I was a [former] deputy" after "another DOC inmate, Eddie Coleman, found out, [and] he struck me from behind, causing severe damage to my left eye" on August 9, 2009.  Record Doc. No. 41 at p. 14. He testified that on that date Coleman "came up from behind me and struck me in the left eye, with some sort of object."  <u>Id.</u> at pp. 16-17.  He said he had no previous problems or complaints with Coleman and that the attack by Coleman was sudden and unexpected. Asked why Coleman attacked him, he said, "[t]hey had just found out that I was a ex-corrections officer and they felt as though I was with the Sheriff's Office.  They said once a cop, always a cop."  <u>Id.</u> at pp. 17-18.  Reaux testified that after this incident another inmate told him that Coleman had struck him because "he didn't feel comfortable living with somebody who was a cop."  <u>Id.</u> at pp. 31-32.

As to the December 18, 2009, attack, Reaux testified that after returning to his cell that morning from a stay in disciplinary confinement, he discovered that his personal

food items that he had purchased from the prison commissary and placed in his storage

box under his bunk were missing.  He testified that he began to ask several inmates who

were already awake if they had seen who had taken his things.  When they "told me, 'no,'

. . . I started waking everybody up, asking them.  When I got to the certain inmate, Ricky

Harrison . . . when I looked inside his box he hit me.  Then his other . . . friends came and

they jumped on me also." Id. at pp. 8-9.  Reaux identified the other inmates involved in

the December 2009 attack as Christopher Seaton, Jeffrey Jacobs, Alex Jones and Kym

Dilworth.  Id. at p. 9.  He blamed this incident on "Deputy Cook . . . he told the inmates

that he knew that I was a (sic) ex-corrections officer and it caused me  a lot of problems

since I had been in here." Id. at p. 12.  As with Coleman, however, Reaux testified that

he had not had prior problems with the five inmates involved in the December incident

and that he had never told anyone he could not be in the same dorm with them.  Id. at pp.

13, 29.  Reaux blamed Jeffrey Jacobs as "the catalyst behind the (December) attack.  He

said that while I was in Orleans Parish, he remembers seeing me there, . . . And he was

able to get the guys not to like me." Id. at pp. 18; 27-28 (emphasis added).

    None of this testimony is sufficient to support a finding in Reaux's favor as to

causation of either incident by Cook's comments. In addition, while the comments

attributed to Cook may be sufficient to establish the first prong of the deliberate

indifference test; i.e., that Cook knew of some risk of harm to Reaux, the evidence is

16

wholly insufficient to establish the remaining components of the deliberate indifference standard; i.e., that Cook knew that a substantial risk of serious harm existed, that he actually drew the inference, and that he had subjective intent to cause Reaux harm.  For the following reasons, it cannot be concluded that the comments Reaux attributes to Cook constituted subjective recklessness rising to deliberate indifference for Section 1983 purposes.

The August attack by Coleman was sudden and wholly unanticipated.  There is no evidence that Cook or even Reaux had any reason to believe that Coleman posed a substantial risk of serious harm to Reaux.  There is nothing in Reaux's testimony to suggest that Cook – as opposed to someone else or the prison grapevine – was the source of Coleman's knowledge about Reaux's former status.  Similarly, there is nothing in Reaux's testimony to indicate that anyone – much less Cook – could have anticipated the sudden and unexpected December incident.  Reaux's testimony indicates that there were two causes of the December attack other than anything Cook might have said or done.  First, it is clear from Reaux's testimony that the attack occurred after Reaux began waking up the other prisoners because he suspected that an inmate in the prison dorm had stolen his commissary items.  Second, Reaux testified that inmate Jacobs was the "catalyst" of the December attack, not because of anything he had heard Cook say but

because Jacobs himself independently remembered seeing Reaux at OPP when Reaux was a sheriff's deputy working there.  Record Doc. No. 41 at pp. 18-19.

Thus, a focused, individualized evaluation of Reaux's claim against Cook leads to the conclusion that Reaux cannot establish that Cook's deliberate indifference to a serious risk of substantial harm was the cause of either attack.  Under these circumstances, summary judgment in favor of Cook, dismissing the claims against him, is appropriate.

IV.   <u>NO SUPERVISORY LIABILITY</u>

As to the only remaining defendant, Sheriff Jack Strain, Reaux offers no proof that Strain was personally involved in any of the alleged acts or omissions upon which his claims are based.  On the contrary, Reaux testified that he named Strain as a defendant in this matter solely based upon Strain's position as "the overseer" of jail operations. Record Doc. No. 41 at p. 23.

"There is no respondeat superior liability under section 1983."  <u>Eason v. Thaler</u>, 73 F.3d 1322, 1327 (5th Cir. 1996); <u>accord</u> <u>Field v. Corr. Corp.</u>, 364 F. App'x 927, 929 (5th Cir. 2010); <u>Cox v. Irby</u>, 281 F. App'x 390, 391 (5th Cir. 2008); <u>Kohler v. Englade</u>, 470 F.3d 1104, 1114-15 (5th Cir. 2006).  Thus, this defendant cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in his employ or under his

supervision.  Sanders v. English, 950 F.2d 1152, 1160 (5th Cir. 1992); Baskin v. Parker, 602 F.2d 1205, 1208 (5th Cir. 1979); Barksdale v. King, 699 F.2d 744, 746 (5th Cir. 1983).

To hold this defendant liable, plaintiff must establish either that he was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [this defendant] . . . and the alleged constitutional violation."  Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981); accord Cox, 281 F. App'x at 391; Kohler, 470 F.3d at 1115.  "It is facially evident that this test cannot be met if there is no underlying constitutional violation."  Rios v. City of Del Rio, 444 F.3d 417, 425-26 (5th Cir. 2006) (citing Breaux v. City of Garland, 205 F.3d 150, 161 (5th Cir. 2000)).  In the instant action, plaintiff has failed to establish either that Sheriff Strain was personally involved in any acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of Sheriff Strain and the alleged constitutional violation.

A supervisory official may be held liable for his subordinates' actions only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury. Monell v. Dep't of Social Servs., 436 U.S. 658, 691-95 (1978); Thompson v. Johnson, 348 F. App'x 919, 921 (5th Cir. 2009) (citing Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992)); Gates v. Tex. Dep't of Protective & Regulatory Servs., 537 F.3d

404, 435 (5th Cir. 2008).  Without alleging a particular custom, usage or policy for which defendant [Sheriff Strain] can be held constitutionally liable, plaintiff fails to state a claim for relief under Section 1983.  <u>Monell</u>, 436 U.S. at 691-95; <u>Thompson</u>, 348 F. App'x at 921-22; <u>Mouille</u>, 977 F.2d at 929.

 To hold a supervisory official liable for the acts of a subordinate, "plaintiff must show that (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."  <u>Smith v. Brenoettsy</u>, 158 F.3d 908, 911-12 (5th Cir. 1998).  To state a failure to protect claim under Section 1983, Reaux must show that he is incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.  <u>Neals v. Norwood</u>, 59 F.3d 530, 533 (5th Cir. 1995).  For an official to act with deliberate indifference for purposes of either claim, he "must both be aware of facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference."  <u>Farmer v. Brennan</u>, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)."  <u>Payne v. Pickett</u>, 246 Fed. Appx. 884, 889-90, 2007 WL 2537839, *5 (5th Cir. 2007).  No proof sufficient to establish the foregoing essential elements of a supervisory liability claim under Section 1983 has been submitted.

Accordingly, both defendants are entitled to summary judgment in their favor as a matter of law.

### **CONCLUSION**

For all of the foregoing reasons, **IT IS ORDERED** that defendants' motion for summary judgment is GRANTED.  Because I have granted summary judgment on the grounds described above, I find it unnecessary to address defendants' qualified immunity argument.  Plaintiff's claims are hereby DISMISSED WITH PREJUDICE.  Judgment will be entered separately, plaintiff to bear all costs of this proceeding.  Fed. R. Civ. P. 54(d)(1).

New Orleans, Louisiana, this ____9th____ day of August, 2011.


_____
        JOSEPH C. WILKINSON, JR.
    UNITED STATES MAGISTRATE JUDGE